WILSON v. COULTER et al.

(Supreme Court, Appellate Division, Fourth Department. May 7, 1898.)

1. HUSBAND AND WIFE—ALIENATING AFFECTIONS—SUFFICIENCY OF EVIDENCE.
    In an action for alienation of affections and for loss of support, where defendants admitted that they upbraided their brother for marrying plaintiff, and ordered her away when she came to search for him at one of their houses, where he was concealed, and furnished him money to leave the state, to which he did not return, the case was for the jury.

2. SAME—VERDICT—EXCESSIVENESS.
    Where defendants violently upbraided plaintiff's husband for marrying her, and aided him to desert her, and treated her in a rude and humiliating manner when she inquired as to his whereabouts, and induced him to convey to them all his property, consisting of a farm of 100 acres, a verdict for $1,750 damages for alienating his affections is not excessive.

3. SAME—MOTIVE OF DEFENDANT.
    The motive of persons inducing a husband to desert his wife may be considered on the question of damages.

4. SAME—INTENT OF DEFENDANT—EVIDENCE.
    A voluntary conveyance to defendants of all his property by a husband, three days after his marriage, and after deserting his wife, and defendants' exclusive enjoyment of same ever since, is competent to prove their intent to deprive the wife of her support, and also their motive for inducing such desertion.

5. SAME—EVIDENCE—RELEVANCY.
    A prior engagement to marry on the part of the husband is not admissible on behalf of defendants to a suit by the wife for alienating his affections.

**6. SAME.**

In an action for alienation of a husband's affections, it is proper to confine his testimony as to aid or solicitation to desert the wife to that given or made by defendants, and exclude that coming from third persons.

**7. SAME.**

Where defendants were alleged to have induced and aided a husband to desert his wife, it is immaterial that after such desertion he received no money from them, or that money previously furnished for such purpose was to be applied against an indebtedness due him from one of them.

**8. SAME.**

Where a marriage was voluntarily entered into, and, on the husband's desertion of the wife, she sued for alienation of his affections, it is immaterial which one made the proposal of marriage.

**9. SAME.**

In a suit for alienation of a husband's affections, it is competent to show that, by reason of a voluntary conveyance by him to defendants of all his property, plaintiff was unable to realize on her judgment of separation for costs or alimony.

**10. SAME—WITNESSES—EXAMINATION.**

In an action for alienation of a husband's affections, an objection is properly sustained to a question which simply calls for a summing up of the husband's reasons for deserting his wife, where he has already testified to all the circumstances, and the reasons therefor.

**11. SAME—SEPARATION—EFFECT.**

A wife may recover for loss of conjugal society and support incurred subsequently to a decree of separation granted her, where such decree was sought only by reason of her inability to find her husband, and the need of enforcing a provision for her support; the wrongful acts of defendants having caused him to desert her.

**12. TRIAL—CREDIBILITY OF WITNESSES—INSTRUCTIONS.**

An instruction that, if a witness testified falsely as to one issue, the jury might, if they saw fit, disregard all his testimony, is not erroneous, as requiring them to disregard it, if at all, in the entirety.

**13. APPEAL—RECORD—REVIEW.**

To obtain a ruling on appeal as to the admissibility of an excluded conversation, it must be incorporated into the record.

Appeal from trial term, Niagara county.

Action by Elizabeth Wilson against Mary Coulter and another. From a judgment for plaintiff, and an order denying a motion for new trial made on the minutes, defendants appeal. Affirmed.

This action was begun March 17, 1896, to recover damages for alienating the affections of the plaintiff's husband, and inducing him to desert her. At about 9 o'clock in the evening of Friday, September 14, 1894, the plaintiff, then Elizabeth Richardson, spinster, aged 43 years, and William A. Wilson, bachelor, aged 44 years, intermarried at the town of Cambria, N. Y. The plaintiff then lived with two brothers and two sisters, farmers, and resided within about 20 rods of the house in which William A. Wilson then resided, who was a farmer owning 100 acres of land, 40 acres of which were subject to a life lease of his mother. The defendants are sisters of William A. Wilson, and are widows, owning small farms in the vicinity, which he had worked for them for a few years previous to the marriage. The marriage was solemnized by a clergyman of the town, and there is no question as to its regularity. On the evening of the marriage a party was given by Mary Coulter, one of the defendants, to which William A. Wilson and Miss Elizabeth Richardson were invited; but, instead of attending the party, they went to the residence of the clergyman, and were married, and returned to the home of the bride. They retired between 11 and 12 o'clock, and occupied the same room. At about half past 5 the next morning they arose, and William A. Wilson left to do the chores at the house where he resided, and never returned. The marriage was preceded by a courtship of about six months. The bride bore an unblemished reputation,

and, though William A. Wilson was sworn, the only reason he gave for his conduct was that she insisted on being married on that occasion, against his protest, and that after the marriage she asked him to convey to her his farm. This she denied. On leaving the house, Mr. Wilson returned to his dwelling, where one of the defendants, his sister Margaret Brockway, resided. He told her that he was married, and she upbraided him with much severity for his conduct. On the same day (Saturday) the other defendant, Mary Coulter, his sister, came to the house, and she also talked severely to him about his conduct; and during the conversation he told his sisters, as they testified, that he would not live with his wife, but should go away. The evidence of William A. Wilson was taken on a deposition, and it appeared that they became engaged in the spring of 1894, and had frequently talked of their approaching marriage. The clergyman who performed the ceremony, and his daughter, who was present, testified that William A. Wilson was not reluctant to enter into the marriage relation, but seemed willing and cheerful, and "they acted similar to other brides and grooms." He remained concealed in the houses of his sisters,—part of the time of the house of one of them, and part of the time at the house of the other, on Saturday and Sunday; and on Monday, September 17th, he went with Mrs. Coulter to Lockport, where he conveyed his farm to the defendants. After the execution and delivery of the deed, which was afterwards recorded, Mrs. Coulter accompanied Mr. Wilson to Buffalo, and gave him $75, which she had borrowed on the day previous, for the purpose of enabling him to go into a Western state. Mrs. Coulter testified that she saw her brother purchase a ticket for Duluth, and that he left on the train, since which he has not returned to this state. On Sunday afternoon, at about 3 o'clock, the plaintiff went to the residence of Margaret Brockway, for the purpose of finding her husband. She there found both defendants, and an altercation occurred, and the plaintiff was not allowed to enter the house. At this time her husband was upstairs, in a bedroom. The plaintiff testified that one of the defendants rang a bell, and the other pounded on tin pans and blew a tin horn, which was kept up, as the plaintiff testified, until she returned to her home, and that this was kept up every night for a week. The defendants testified that they did not ring bells, pound pans, or blow tin horns, but admitted that some one did. Other conduct on the part of the defendants was testified to by the plaintiff, and corroborated to some extent by other witnesses, which was quite uncivilized in its character. For many months the plaintiff was unable to learn of the whereabouts of her husband. August 10, 1895, she began an action against her husband for separation on the ground of desertion, and April 1, 1896, a judgment of separation was entered. Under this judgment the plaintiff has been unable to recover anything from the estate of her husband. His farm, which was conveyed to the defendants, has ever since been occupied by them. The plaintiff testified that previous to their separation Mr. Wilson had always been kind and affectionate towards her, and that his sisters had never exhibited ill feeling towards her until after the marriage. The jury rendered a verdict for $1,750 damages, and from the judgment entered thereon, and from an order denying a motion for a new trial made on the minutes, the defendants appeal.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Abner T. Hopkins, for appellants.
P. F. King, for respondent.

FOLLETT, J. The appellants urge five grounds for reversal of the judgment and order: (1) That the court erred in overruling the defendants' motion for a nonsuit made at the close of the plaintiff's case, and renewed at the close of the evidence; (2) that the verdict is against the weight of evidence; (3) that the verdict is for excessive damages; (4) for errors in admitting and rejecting evidence; (5) for errors in the instructions of the court to the jury.

The court did not err in refusing to nonsuit the plaintiff, as the

evidence was quite sufficient to present a question of fact for the jury, as to whether the defendants induced plaintiff's husband to separate from her.   Both defendants were sworn before the referee in the action for a separation, and, by the minutes of the evidence produced and verified on this trial, it appears that Mrs. Coulter testified that on the next day after the marriage she went to Lockport, and consulted counsel, to see if the marriage could not be annulled.   She also testified that she loaned her brother $100, with which to leave the state; and both defendants testified that on Sunday, when the plaintiff came to the house, looking for her husband, they ordered her off the premises.   Mrs. Coulter testified that (when the plaintiff started to leave the premises):

"Then we had some fun.   Some one rang a bell as she went up the road. Some one beat pans or pails, and blew horns, and made a noise generally, to humiliate her.   The Sabins were all there.   They brought their own bells.   I took my full share in this business.   It was after I gave my brother the hundred dollars."

The defendants, by their evidence given on this trial, and on the trial before the referee, established a cause of action as against themselves.   For the reasons before stated, the verdict is not against the weight of evidence, but is fully supported by it.

The verdict for $1,750 is not excessive, as the evidence clearly establishes that the defendants not only upbraided the plaintiff's husband, in the most violent terms, for having married, but induced and aided him to leave the state; and, when the plaintiff came to inquire after her husband, they were guilty of the most uncivilized conduct, for the purpose of humiliating and holding her up to derision, and afterwards took possession of all his property for their own benefit, and thus far have excluded the plaintiff from any benefit therein.   In actions of this kind, the motives which induce defendants to do acts constituting the cause of action may be considered on the question of damages.   Barnes v. Allen, 1 Abb. Dec. 111; Id., 40 N. Y. 390; 1 Sedg. Dam. (8th Ed.) § 376.

The exceptions to the admission and exclusion of evidence will now be considered:

It was competent for the plaintiff to show (folio 150) that the defendants, three days after the marriage, took a conveyance to themselves of all the property of the husband, and have since enjoyed it, as bearing upon their intent to deprive the plaintiff of all means of support out of the property of her husband, to which she had a legal right, and also as tending to show that the defendants were interested in separating the husband from his wife.   It should be stated that the defendants do not pretend to have paid anything for the deed which they received.   However, the question objected to was not answered.

The defendants offered to show (folios 370, 371) that the plaintiff's husband at one time was engaged to a woman in Dakota, and, impliedly, that the engagement existed at the time of his marriage, which was excluded on the plaintiff's objection, and the defendants excepted.   It was not asserted that the plaintiff knew of this alleged engagement, and the fact inquired about was not relevant to

any issue in the case. A prior engagement to another of one of the parties entering into the marriage relation fortunately does not affect the marriage, nor is it usually the cause of inharmonious relations between the husband and wife. Besides, the fact that there was such an engagement had been testified to by the defendants.

At folio 384 the defendants offered to read a conversation between the husband and the defendant Coulter, which I assume was narrated by the husband in his deposition, though this fact does not appear in the record. This offer was objected to by the plaintiff, excluded, and the defendants excepted. The case does not show what the conversation was, when it occurred, or to what subject it related. In case the defendants desired to rely on this exception, they should have incorporated the rejected evidence in the record, so that this court could have determined whether it was material. The trial court saw it, and determined that it was immaterial; and this court cannot, without seeing it, hold that it was material.

The defendants asked the husband (folio 388):

"Q. Did any one tell you to get out of the way?"

This question was objected to by the plaintiff, excluded, and the defendants excepted. The witness was permitted to testify:

"I did not leave my wife on account of anything that either of my sisters ever said to me, nor stay away from my wife on account of anything either of my sisters did. They have not at any time told me not to provide for her. I have not failed to provide for my wife on account of anything either of my sisters said or did. It was my own desire to leave my wife."

He also testified that he left his wife because she wanted a deed of his property, and insisted on being married at the time they were married. This was all the defendants were entitled to on this subject. What any one else said to him about going away was irrelevant.

It was not error to refuse (folio 393) to allow the husband to testify that he had received no money from his sisters since he left Buffalo; nor was it material to show by him that the money borrowed by Mrs. Coulter on Sunday, and given him to pay the expenses of his journey, should be applied against $100 which he asserted she owed him.

The defendants asked the husband (folio 396): "Q. Did you ever ask Miss Richardson to marry you?" "Q. Did she ever ask you to marry her?" These questions were objected to by the plaintiff's counsel. The objection was sustained, and an exception taken. The husband had previously testified that he and Miss Richardson became engaged during the summer previous to their marriage. Pursuant to this engagement, they voluntarily intermarried, and it is entirely immaterial which made the proposal. A woman has the legal right to make a proposal of marriage, and a man, like a woman, may accept or decline; and a marriage voluntarily entered into, preceded by an engagement proposed by the woman and accepted by the man, is in all respects as legal as a marriage founded on an engagement proposed by the man and accepted by the woman.

Had the fact been established that the engagement and marriage in this case were proposed by the plaintiff, it would not have justified an inference that both were not the result of mutual affection. Which shall make the proposal is merely a matter of taste and custom.

The defendants asked the husband (folio 411): "Q. Now tell us why you left your wife?" He had already stated the circumstances attending the marriage, his abandonment of his wife, and his reasons therefor; and the question simply called for a summing up of the operations of his mind, and it was not error to exclude it.

The court did not err in allowing the plaintiff to show (folio 423) that, by reason of the conveyance of her husband's property to the defendants, nothing had been recovered, under her judgment of separation, for alimony or costs. In case the theory of the plaintiff was sustained by the jury, as it was, she had the right to show what she had been deprived of by the conduct of the defendants.

The alleged errors in the charge, which were not excepted to, but now complained of, are entirely insufficient to warrant the granting of a new trial on the ground that the issues were submitted upon an erroneous theory, within the rule laid down in Whittaker v. Canal Co., 49 Hun, 400, 3 N. Y. Supp. 576, and kindred cases.

It is urged that the court erred in saying to the jury that if they found that William A. Wilson testified untruthfully in respect to the plaintiff's conduct in inducing him to marry her, they might, if they saw fit, disregard his evidence in relation to other subjects testified to by him. The jury were not advised to disregard his evidence in other respects if he were found to have testified untruthfully upon one issue, but were simply told that his untruthfulness upon one issue, if so found, might be taken into consideration in determining the truthfulness of his testimony on other issues. The instructions were clearly within the rule of the cases arising under the maxim, "False in one, false in all."

At folio 454 the court told the jury that Mrs. Coulter said to her brother "that he was either a goose or a fool to marry this woman," and it is urged by the defendants that there is no evidence of such a statement. John E. Pound, the referee before whom the limited divorce action was tried, testified that Mrs. Coulter swore before him: "We were all angry over it. We scolded him for being such a goose or fool."

The reference made by the court at folio 465 to the treatment of the plaintiff by the defendants and their hired help was borne out by the evidence. The employés of the defendants took part in beating of pans and blowing of horns, and were not restrained by the defendants, although they were present.

The court did not assume at folio 475 that the plaintiff's husband was influenced to separate from her by the defendants, nor did it instruct the jury that the declarations made by the husband in respect to his intention not to live with the plaintiff were immaterial, but, instead, told the jury that, if these declarations were made prior to being influenced by the defendants, they were material declarations, indicating a purpose on his part to abandon his

wife by his own free volition. Nor was there error committed at folio 476. The defendants made no pretense that they desired their brother to return to, and live with, the plaintiff. Mrs. Coulter went alone, and on her own account, the day succeeding the marriage, to see if it could not be annulled. Both defendants testified that they advised the plaintiff's husband to fight out the question of the marriage with the plaintiff. After the court had submitted the principal issue of fact to the jury,—whether the defendants did induce or persuade the husband of the plaintiff to remain away from her,—it said that the action was based in part on "the loss of the conjugal society which of right should exist between a husband and his wife, and which the plaintiff has been deprived of in consequence of the wrongful and unlawful acts of the defendants." Reading the parts of the charge immediately preceding and succeeding this instruction, it is plain that the judge did not intend to take the principal question of fact from the jury, and that the jury could not have so understood him. The court did not instruct the jury that the plaintiff was entitled to recover, and that the only question for them was that of damages. Not one of the foregoing instructions discussed was excepted to by the counsel for the defendants, and, if every one of the instructions had been, no error would have been presented.

Upon the request of the plaintiff's counsel, the court charged, "There is no evidence in the case that would legally justify the plaintiff's husband in abandoning her." To this the defendants excepted. I am unable to find any evidence in this record, given in behalf of the defendants, which, if believed, would have justified or excused the husband for deserting his wife.

The defendants requested the court to charge that the plaintiff could not recover damages subsequent to August 10, 1895, when she began her action for a separation on the ground of desertion, and also that she could not recover damages after April 1, 1896, when the judgment in that action was entered. The court replied:

"On that subject, gentlemen, I will charge you that if it was the plaintiff's desire and wish to become separated from her husband at the time, and end her relations with him, rather than to live with him as her husband, then you will not take into consideration her loss of his conjugal society after that period. But if, on the other hand, you find that she desired to live with her husband, but was unable to find him,—to locate him,—and that this action of separation was instituted under the circumstances, and as the necessary result of the action of these defendants in inducing her husband to leave her and remain away from her, and as a necessary course for her, in order to obtain some provision for her maintenance and support, then you are entitled to still take into consideration, as charged by the court before, all the loss of the conjugal society resulting from the wrongful act of the defendants."

The defendants excepted to the refusal to instruct as requested, and to the instructions given. In actions of this character the plaintiff is entitled to recover damages, not only for the loss of her husband's society, but for the loss of his support and maintenance, which the marriage relation entitles her from the husband and his estate. In case the jury found that the plaintiff did not prosecute her action for a separation because of her desire to live apart from her husband, but because she was unable, by the action of the de-

fendants, to learn his whereabouts and induce him to return, then the permanent loss of his society and support could be taken into account by the jury on the question of damages.

An examination of all the questions discussed by the learned counsel for the appellants in his brief, and orally at the bar of this court, fails to disclose any just or legal ground for reversing the judgment, which, with the order denying a motion for a new trial, should be affirmed, with costs.    All concur.